UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CLAUDIA TERRANOVA and THOMAS
TERRANOVA,

                       *Plaintiffs,*

        *-against-*

TOYOTA OF NEWBURGH and TOYOTA
MOTOR SALES U.S.A., INC.

                       *Defendants.*
-------------------------------------------------------------------x

**DECLARATION IN SUPPORT
OF PLAINTIFFS'
MOTION TO REMAND**

Civil Action No.: 08-CV-01217
Hon. William C. Conner, USDJ

        STEWART G. MILCH declares the following to be true under penalties of perjury pursuant to 28 U.S.C. § 1746:

        1.     I am the Managing Attorney of Shandell, Blitz, Blitz & Ashley, LLP, counsel for plaintiffs Claudia Terranova and Thomas Terranova ("plaintiffs" or "the Terranovas") in this action. I submit this declaration in support of the plaintiffs' motion to remand this matter to the Supreme Court of the State of New York, Orange County.

        2.     This declaration sets for the parties' pleadings and other record evidence in support of the plaintiffs' motion.

        3.     A copy of the plaintiffs' Summons and Verified Complaint dated December 4, 2007 is attached as **Exhibit A**.

        4.     A copy of defendant Toyota Motor Sales, U.S.A., Inc.'s ("defendant" or "Toyota") Notice of Removal dated February 4, 2008 is attached as **Exhibit B**.

        5.     A copy of Toyota's Verified Answer dated February 11, 2008 is attached as **Exhibit C**.

6.    A copy of the New York State Department of Motor Vehicles Police Accident Report is attached as **Exhibit D**.

7.    A copy of the contract for lease of the Toyota vehicle which is the subject of this lawsuit is attached as **Exhibit E**.

8.    A copy of the Affidavit of Service for service on defendant Toyota of Newburgh, Inc. is attached as **Exhibit F**.

9.    Copies of the New York Secretary of State corporate database information for Toyota of Newburgh, Inc. and Hometown Newburgh, Inc. are attached as **Exhibit G**.

10.    A copy of the Supplemental Summons and Amended Complaint dated February 29, 2008 and filed with the Orange County clerk is attached as **Exhibit H**.

11.    A copy of a photograph of the 2007 Toyota Camry which is the subject of this action is attached as **Exhibit I**.

I declare under penalty of perjury that the foregoing is true.  Executed on March 28, 2008.

STEWART G. MILCH (SGM 2533)

SUPREME COURT OF THE STATE OF NEW YORK **2007 - 12229**
COUNTY OF ORANGE

*12/26/07*

|  |  |
|---|---|
| CLAUDIA TERRANOVA and THOMAS TERRANOVA, | Index No.<br>Date Purchased: |
|  | Plaintiffs designate Orange as the place of trial. |
| Plaintiffs, | The basis of the venue is Defendant, TOYOTA OF NEWBURGH's principal place of business. |
| -against- | **SUMMONS** |
| TOYOTA OF NEWBURGH and TOYOTA MOTOR SALES, U.S.A., INC., | Plaintiffs reside at<br>102 Long Cove Bend<br>Pine Forest County Club<br>Summerville, SC 2948 |
| Defendants. |  |

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with the summons, to serve a notice of appearance, on Plaintiff(s) Attorneys within 20 days after the service of the summons, exclusive of the day of service (or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, a judgment will be taken against you by default for the relief demanded in this complaint.

Dated: New York, New York
      December 4, 2007.

Mitchel H. Ashley, Esq.
SHANDELL, BLITZ, BLITZ
    & ASHLEY, LLP
Attorneys for Plaintiff
150 Broadway
New York, NY 10038
(212) 513-1300

Defendant(s)' Address:  Toyota of Newburgh
                      2934 Rte. 9W
                      New Windsor, NY 12553

                      Toyota Motor Sales, U.S.A., Inc.
                      19001 South Western Avenue
                      Torrance, CA 90501

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

---

CLAUDIA TERRANOVA and THOMAS TERRANOVA,

Plaintiffs,

-against-

TOYOTA OF NEWBURGH and TOYOTA MOTOR SALES, U.S.A., INC.,

Defendants.

---

Index No.

**_VERIFIED COMPLAINT_**

Plaintiffs, complaining of the defendants, by their attorneys, SHANDELL, BLITZ, BLITZ & ASHLEY, LLP, respectfully state and allege, upon information and belief:

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>:

FIRST:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was a foreign corporation duly organized and existing under and by virtue of the laws of one or more States of the United States.

SECOND:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was a domestic corporation duly authorized to do business in the State of New York.

THIRD:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of designing automobiles and appurtenances thereto.

FOURTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of manufacturing automobiles and appurtenances thereto.

FIFTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of assembling automobiles and appurtenances thereto.

SIXTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of selling automobiles and appurtenances thereto.

SEVENTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of distributing automobiles and appurtenances thereto.

EIGHTH: That defendant, TOYOTA OF NEWBURGH expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

NINTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of designing airbags and appurtenances thereto.

TENTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of manufacturing airbags and appurtenances thereto.

ELEVENTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of assembling airbags and appurtenances thereto.

TWELFTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of selling airbags and appurtenances thereto.

THIRTEENTH:    That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of distributing airbags and appurtenances thereto.

FOURTEENTH: That defendant, TOYOTA OF NEWBURGH expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.

2

FIFTEENTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was a foreign corporation duly organized and existing under and by virtue of the laws of one or more States of the United States.

SIXTEENTH: That at all times hereinafter mentioned, defendant TOYOTA MOTOR SALES, U.S.A., INC., was a domestic corporation duly authorized to do business in the State of New York.

SEVENTEENTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of designing automobiles and appurtenances thereto.

EIGHTEENTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of manufacturing automobiles and appurtenances thereto.

NINETEENTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of assembling automobiles and appurtenances thereto.

TWENTIETH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of selling automobiles and appurtenances thereto.

TWENTY-FIRST: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of distributing automobiles and appurtenances thereto.

TWENTY-SECOND: That defendant, TOYOTA MOTOR SALES, U.S.A., INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

TWENTY-THIRD: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of designing airbags and appurtenances thereto.

TWENTY-FOURTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of manufacturing airbags and appurtenances thereto.

TWENTY-FIFTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of assembling airbags and appurtenances thereto.

TWENTY-SIXTH: That at all times hereinafter mentioned, defendant TOYOTA MOTOR SALES, U.S.A., INC., was in the business of selling airbags and appurtenances thereto.

TWENTY-SEVENTH: That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of distributing airbags and appurtenances thereto.

TWENTY-EIGHTH: That defendant, TOYOTA MOTOR SALES, U.S.A., INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.

TWENTY-NINTH:  That at all times hereinafter mentioned, the plaintiffs herein were the lessees of a Toyota Camry bearing plate number DSB7240 for the year 2007 and Vehicle Identification Number 4T1BE46K67U540140.

THIRTIETH:  That at all times hereinafter mentioned, the plaintiff, CLAUDIA TERRANOVA was the operator of a Toyota Camry bearing plate number DSB7240 for the year 2007 and Vehicle Identification Number 4T1BE46K67U540140.

THIRTY-FIRST:  That at all times hereinafter mentioned, defendants designed, manufactured and distributed the vehicle identified above in paragraphs TWENTY-NINTH" and "THIRTIETH".

THIRTY-SECOND:  That at all times hereinafter mentioned, defendants designed, manufactured and distributed the airbag contained in the vehicle identified above in paragraphs TWENTY-NINTH" and "THIRTIETH"

THIRTY-THIRD:  That at all times hereinafter mentioned, defendants owed certain duties to the plaintiffs with respect to the design, manufacture, engineering, assembling, distribution, advertising, labeling, instructing, warning and offering for sale the subject vehicle which proved to be unsafe, unfit and hazardous for use.

THIRTY-FOURTH:  That at all times hereinafter mentioned, defendants owed certain duties to the plaintiffs with respect to the design, manufacture, engineering, assembling, distribution, advertising, labeling, instructing, warning and offering for sale the subject airbag which proved to be unsafe, unfit and hazardous for use.

THIRTY-FIFTH:    That on or about the 15th day of December 2006, at approximately 9:00 p.m., while plaintiff, CLAUDIA TERRANOVA, was operating the

5

aforementioned Toyota Camry, on Route 300 at its intersection with Route 17K in the Town of Newburgh, County of Orange, State of New York, said vehicle came in contact with another vehicle causing plaintiff to suffer severe personal injuries and grievous permanent personal injuries.

THIRTY-FIFTH: That the aforementioned accident occurred without any negligence on the part of the plaintiffs contributing thereto.

THIRTY-SIXTH: That it was the duty of the defendants to design and market the aforesaid vehicle and sell said vehicle in good safe condition so as not to endanger the life and limbs of any persons, including plaintiff, who was lawfully and properly using same therein and to give due and timely notice or warning of any attendant peril or danger.

THIRTY-SEVENTH: That it was the duty of the defendants to design and market the aforesaid airbag and sell said airbag in good safe condition so as not to endanger the life and limbs of any persons, including plaintiff, who was lawfully and properly using same therein and to give due and timely notice or warning of any attendant peril or danger.

THIRTY-EIGHTH: That the said accident and injuries resulting therefrom were due to the recklessness, carelessness and negligence of the defendants their agents, servants and/or employees, in the manufacturing, engineering, assembling, building, inspecting, testing, design, and selling and distribution of the aforesaid vehicle and airbag; in that they failed to use proper, sufficient and good material in the construction, manufacturing, engineering, assembling, building, inspecting, testing, designing, selling and distribution of the aforesaid vehicle and airbag; in manufacturing, engineering, assembling, building, inspecting, designing, selling and distributing said vehicle and airbag so that it was inherently dangerous, improper, dangerous and defective in the engineering concept and design; that said vehicle and airbag was manufactured, engineered,

assembled, built, inspected, tested, designed, sold and distributed in a dangerous and defective manner; in failing to protect the occupant adequately and properly against impact; in failing to properly and adequately protect occupant and user of the vehicle and airbag against foreseeable injuries; in manufacturing, engineering, assembling, building, inspecting, testing, designing, selling and distributing an inherently dangerous vehicle and airbag; in that said vehicle and airbag were inherently dangerous and defective in manufacture, engineering, assembling, building, inspecting, testing, designing, selling and distributing the aforesaid vehicle and airbag in that said vehicle and airbag were unsafe; in that the defendants held their product out to the purchaser of same that it could be used with safety; in failing to warn of the defects; in that the defendants knew of the defective condition or by reason of inspection should have known that such defects were dangerous and would cause injury to the user and occupants and users of this vehicle and airbag; in failing to adequately test the said vehicle and airbag; in failing to design, construct, engineer and install a safe and proper vehicle and airbag; in holding out and representing to the public that the said vehicle and airbag were safe, proper and fit for the use intended and of merchantable quality; in fact, the said defendants placed the vehicle and airbag in the channels of commerce without properly testing and inspecting same for defects and hazards contained therein; in causing, allowing and permitting the said vehicle and airbag to be distributed and sold without sufficient and proper testing for safety and its design; in failing to warn the general public and the plaintiff of the defects contained therein; and in otherwise being careless and negligent.

THIRTY-NINTH: That as a result of the negligence and carelessness of the defendants herein, plaintiff sustained severe and grievous personal injuries as defined by Section 5102(d) of the Insurance Law, or economic loss greater than basic economic loss, as defined in Section 5102(d) of the Insurance Law.

FORTIETH:  That plaintiff is a covered person as defined by Section 5102(d) of the Insurance Law of the State of New York.

FORTY-FIRST:  That as a result of the foregoing, plaintiff was rendered sick, sore, lame and disabled; suffering injuries both internal and external; suffered pain and anguish; suffered loss of enjoyment of life; was confined to her bed and home for a lengthy period of time; was compelled to seek medical care and attention and, upon information and belief, will in the future be compelled to seek medical care and attention; was prevented from following her usual occupation and incurred lost earnings as a result thereof and upon information and belief, will in the future, be disabled from following her usual occupation and was otherwise injured and damaged.

FORTY-SECOND:  That this action falls within one or more of the exceptions set forth in CPLR 1602.

FORTY-THIRD:  That by reason of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

FORTY-FOURTH:  That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

<u>AS AND FOR A SECOND CAUSE OF ACTION:</u>

FORTY-FIFTH:  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "FIRST" through "FORTY-SECOND" of the first cause of action inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

FORTY-SIXTH:  That at the time of the manufacture, engineering, design, sale, assembly, use, distribution, inspection and testing of the aforesaid products by defendants, said

8

defendants had full knowledge that the said product would be used for the purposes for which they were intended and said defendants represented and warranted to plaintiff and to any other potential, ultimate user of said products that said product were safe, suitable and fit for all purposes intended and that said products were in a good, safe, fit and merchantable condition.

FORTY-SEVENTH: That Plaintiff relied upon the knowledge, judgment and skill of the defendants in the manufacture, engineering, design, sale, assembly, use, distribution, inspection and testing of said products and the selection and use of strong, suitable, adequate, safe and proper materials and mechanism.

FORTY-EIGHTH: That plaintiff relied upon the representations, knowledge, judgment and skill of the defendants in the inspection and testing of said products.

FORTY-NINTH: That contrary to representations and warranties of defendants, said products had not been adequately tested and was not free from dangerous and latent defects in the manufacture, engineering, design, sale, assembly, use and distribution, maintenance, inspection and testing thereof.

FIFTIETH: That defendants violated and breached said implied warranties and said products were not of good quality, were not free from defects, were not fit or merchantable, were not fit or suitable for all purposes intended, and were not designed in a good, safe and proper manner and were not manufactured, constructed, designed, sold, assembled, used, distributed, maintained, inspected and tested in a good, safe and fit manner or with good, safe, fit or merchantable components.

FIFTY-FIRST: The fact that said products were not merchantable, unfit for the purposes intended and had latent defects therein could not be discovered by plaintiff.

9

FIFTY-SECOND:  As a result of the defendants' breach of its implied warranties, plaintiff was caused to sustain severe and grievous permanent personal injuries and damages and, accordingly, seeks appropriate recompense.

FIFTY-THIRD: That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

## AS AND FOR A THIRD CAUSE OF ACTION

FIFTY-FOURTH:  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "FIRST" through "FORTY-SECOND" of the first cause of action and paragraphs "FORTY-FIFTH" through "FIFTY-SECOND" of the second cause of action inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

FIFTY-FIFTH:  In connection with the manufacture, engineering, design, sale, assembly, use, distribution, inspection, testing and maintenance of the aforesaid products, defendants are strictly liable under the Doctrine of Strict Liability to a user thereof.

FIFTY-SIXTH:  As a result of the foregoing, plaintiff was caused to sustain severe and grievous permanent personal and damages and, accordingly, seeks appropriate recompense.

FIFTY-SEVENTH: That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>:

FIFTY-EIGHTH:  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "FIRST" through "FORTY-SECOND" of the first cause of action; paragraphs "FORTY-FIFTH" through "FIFTY-SECOND" of the second cause of action and paragraphs "FIFTY-FOURTH" through "FIFTY-FIFTH" of the third cause of action, inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

FIFTY-NINTH:  When plaintiff used the aforesaid products herein, defendants did warrant to plaintiff that the products were manufactured, engineered, designed, sold, assembled, used, distributed, inspected, tested and maintained in a proper, suitable, adequate and safe manner, and would remain so for several years and further warranted that the said products were safe and fit for the use and purposes for which they were made and that they would hold up under normal use without breaking and that the same were free from defects.

SIXTIETH:   Plaintiff accepted and used said products on defendants' representations and expressed warranties and used said products in reliance upon the promises and warranties made by the defendants herein and had no knowledge of any latent defects, inadequacy or deficiency in the manufacture, engineering, design, sale, assembly, use, distribution, inspection, testing and maintenance of said products.

SIXTY-FIRST:   Contrary to said representations and expressed warranties of defendants, as hereinabove alleged, said products were defective in its manufacture, engineering, design, sale, assembly, use, distribution, inspection and testing; were unfit for the purpose for which they was intended, lacked adequate or proper equipment and mechanism; were not manufactured

with good, safe, fit and merchantable components and did not function properly or safely when lawfully operated.

SIXTY-SECOND:  As a result of defendants' breach of express warranty, plaintiff was caused to sustain severe and grievous permanent personal and injuries and damages and, accordingly, seeks appropriate recompense.

SIXTY-THIRD: That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

<u>AS AND FOR A FIFTH CAUSE OF ACTION ON
BEHALF OF PLAINTIFF, THOMAS TERRANOVA:</u>

SIXTY-FOURTH:  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "FIRST" through " FORTY-SECOND" of the first cause of action; paragraphs "FORTY-FIFTH" through "FIFTY-SECOND" of the second cause of action and paragraphs "FIFTY-FOURTH" through "FIFTY-FIFTH" of the third cause of action and paragraphs "FIFTY-EIGHTH" through "SIXTY-FIRST" of the fourth cause of action, inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

SIXTY-FIFTH:   That at all times hereinafter mentioned, plaintiff, THOMAS TERRANOVA, was the husband of plaintiff, CLAUDIA TERRANOVA, and as such lived and cohabited with her and was entitled to her society, services, consortium and companionship.

SIXTY-SIXTH:   That as a result of the foregoing, plaintiff, THOMAS TERRANOVA, has been deprived of the society, services, consortium and companionship of his wife, CLAUDIA TERRANOVA.

SIXTY-SEVENTH:  That as a result of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

SIXTY-EIGHTH:  That as a result of the foregoing, the amount of damages sought herein against defendants exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

WHEREFORE, Plaintiffs demand judgment against defendants herein for such monetary relief or other relief as shall be called for by the proof and to be awarded by the Court and/or jury; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

SHANDELL, BLITZ, BLITZ
& ASHLEY, LLP
Attorneys for Plaintiffs
Office & P.O. Address
150 Broadway
New York, NY  10038
(212) 513-1300

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the State of New York, hereby affirms, that the undersigned has read the foregoing complaint, knows the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief and as to those matters affirmant believes them to be true.

The undersigned further states that the reason this affirmation is made by the undersigned and not the plaintiff is that plaintiff resides in a county other than that in which affirmant maintains his offices.

The grounds of affirmant's belief as to all matters not stated to be upon affirmant's knowledge are as follows:  Medical Reports, Hospital Records, Investigations, File.

The undersigned affirms that the foregoing statements are true, under penalty of perjury.

Dated:  New York, New York
        December 4, 2007

_____
Mitchel H. Ashley



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDIA TERRANOVA and THOMAS
TERRANOVA,

                              Plaintiffs,          **NOTICE OF REMOVAL**

                                                   08 CV 01217
vs.                                                Civil Action No:

TOYOTA OF NEWBURGH and
TOYOTA MOTOR SALES, U.S.A.,
INC.,

                              Defendants

TO:   The Honorable Judges of the United States District Court for the
      Southern District of New York:

      Removing Party, TOYOTA MOTOR SALES, U.S.A., INC. (hereinafter "TMS")

by its undersigned attorneys, respectfully shows this Court:

      1.    The removing party is a defendant in the above-entitled action.

      2.    On December 20, 2007, the above-entitled action was commenced against

the Removing Party in Orange County Supreme Court, Index Number 2007-12229, by

filing a Summons and Verified Complaint, and is now pending therein.

      3.    Upon information and belief, TMS was served with the plaintiffs'

Summons and Verified Complaint on July 7, 2008 by service upon the New York

Secretary of State.

      4.    Upon information and belief co-defendant Toyota of Newburgh has not

been served because no Certificate of Service is on file memorializing service on Toyota

of Newburgh and because Toyota of Newburgh no longer operates a dealership at the

address listed on the Summons.

5.      No further proceedings have occurred in Orange County Supreme Court.

6.      Upon information and belief, the amount in controversy in the above-entitled action, exclusive of interest and costs, exceeds Seventy-Five Thousand ($75,000.00) Dollars, as more fully appears in plaintiffs' Summons and Verified Complaint and given the nature of the underlying products liability action.

7.      The above-entitled action is a civil action for personal injuries alleging breach of express warranty, breach of implied warranty, product liability, and negligence.

8.      Plaintiffs Claudia Terranova and Thomas Terranova are citizens and residents of Summerville, South Carolina according to plaintiffs' Summons and Verified Complaint.

9.      Defendant TMS is a foreign corporation with a principal place of business outside of New York State.

10.     Upon information and belief defendant Toyota of Newburgh is only a nominal and fraudulently joined defendant, if at all, that has not been served and is not a real party in interest in this matter.

11.     Upon information and belief Toyota of Newburgh no longer operates a dealership at the address in the Summons and Verified Complaint in New Windsor, New York or in New York State.

12.     The above-entitled action involves citizens of different states, in that at the time of commencement of this action in New York, and since that time, plaintiffs were and still are citizens and residents of the State of North Carolina; and defendant TMS and Toyota of Newburgh are not residents of the State of South Carolina.

13.    This Court therefore has original jurisdiction of the above-entitled action

pursuant to 28 U.S.C. §1332 based upon diversity and is removable pursuant to 28 U.S.C.

§1441(a).

14.    This Notice is filed with the Court within 30 days after service on

removing party of the Summons and Verified Complaint in the above-entitled action.

DATED:    Buffalo, New York
          February 4, 2008

_____
Robert G. Scumaci, Esq. (RS5343)
**GIBSON, McASKILL & CROSBY**
Attorneys for Toyota Defendants
69 Delaware Avenue, Suite 900
Buffalo, New York 14202
(716) 856-4200

TO:    Mitchel H. Ashley, Esq.
       SHANDELL, BLITZ, BLITZ,
       & ASHLEY, LLP
       Attorneys for Plaintiffs
       150 Broadway
       New York, New York  10038

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

CLAUDIA TERRANOVA and THOMAS
TERRANOVA,

                            Plaintiffs,

vs.

TOYOTA OF NEWBURGH and
TOYOTA MOTOR SALES, U.S.A.,
INC.,

                            Defendants

_____

**ECF Case**

**<u>VERIFIED ANSWER</u>**

08cv01217 (WCC) (MDF)

Defendant, Toyota Motor Sales, U.S.A., Inc., by its attorneys, Gibson, McAskill &

Crosby, LLP, as and for an Answer to the Summons and Verified Complaint:

       1.    As to the allegations contained in Paragraphs FIRST, SECOND, THIRD, FOURTH,

FIFTH, SIXTH, SEVENTH, EIGHTH, NINTH, TENTH, ELEVENTH, TWELFTH,

THIRTEENTH, FOURTEENTH, deny knowledge and information sufficient to form a belief as to

those allegations not directed to TMS and deny to the extent any allegations made against TMS.

       2.    Admits the allegations contained in Paragraphs FIFTEENTH, TWENTIETH and

TWENTY-FIRST.

       3.    As to the allegations contained in Paragraph SIXTEENTH, denies TMS was a

domestic corporation, but admits TMS was authorized to do business in the State of New York, and

denies the remaining allegations therein.

       4.    Denies each and every allegation contained in Paragraphs SEVENTHEENTH,

EIGHTEENTH, NINETEENTH, TWENTY-THIRD, TWENTY-FOURTH, TWENTY-FIFTH,

TWENTY-SIXTH, THIRTY-FIFTH, THIRTY-EIGHTH, THIRTY-NINTH, FORTIETH, FORTY-

FIRST, FORTY-SECOND, FORTY-THIRD, FIFTY-THIRD, FIFTY-FIFTH, FIFTY-SIXTH,

FIFTY-SEVENTH, SIXTH-THIRD, SIXTY-SIXTH, SIXTY-SEVENTH and SIXTY-EIGHTH.

5.      As to the allegations contained in Paragraphs TWENTY-SECOND and TWENTY-EIGHTH, denies and reserves all questions of law to this Court.

6.      As to the allegations contained in Paragraph TWENTY-SEVENTH, TMS denies distributing or selling airbags other than those that might have been contained in the complete vehicles distributed by TMS, and denies the remaining allegations contained therein.

7.      Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraphs TWENTY-NINTH, THIRTIETH, THIRTY-FIFTH, FORTY-FOURTH, FORTY-SEVENTH, FORTY-EIGHTH, SIXTY-FIFTH.

8.      As to the allegations contained in Paragraph THIRTY-FIRST, admit that TMS distributed the Toyota Camry bearing Vehicle Identification Number 4T1BE46K67U540140, but denies the remaining allegations directed to TMS, and denies knowledge or information sufficient to form a belief to those allegations directed to co-defendant.

9.      As to the allegations contained in Paragraph THIRTY-SECOND, admits that TMS distributed the original airbags within the Toyota Camry bearing Vehicle Identification Number 4T1BE46K67U540140 that were within the completed vehicle when it was originally sold, denies the remaining allegations directed to TMS and denies knowledge or information sufficient to form a belief to those allegations directed to co-defendant.

10.     As to the allegations contained in Paragraphs THIRTY-THIRD and THIRTY-FOURTH, denies that the vehicle or airbags were unsafe, unfit or hazardous, reserves all questions of law to this Court and denies the remaining allegations therein.

11.     As to the allegations contained in Paragraphs THIRTY-SIXTH and THIRTY-SEVENTH, denies designing the aforesaid vehicle or airbag, admits that the vehicle was certified to

2

comply with all applicable Federal Motor Vehicle Safety Standards; reserves all questions of law to this Court; denies the vehicle was dangerous and denies the remaining allegations.

12.    Treat the allegations contained in Paragraphs FORTY-FIFTH, FIFTY-FOURTH, FIFTY-EIGHTH, SIXTY-FOURTH as are treated elsewhere herein.

13.    As to the allegations contained in Paragraphs FORTY-SIXTH, FORTY-NINTH, FIFTIETH, FIFTY-FIRST, FIFTY-SECOND, FIFTY-NINTH, SIXTIETH, SIXTY-FIRST, SIXTY-SECOND and SIXTY-THIRD denies manufacturing, engineering, designing, assembling, using, and testing of the vehicle; denies making any warranties beyond those contained in the Warranty booklet provided to all original purchasers of Toyota vehicles and those warranties implied by law, denies breaching any said warranties; and denies the remaining allegations therein.

14.    Deny each and every allegation of the Verified Complaint not heretofore specifically admitted or denied.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:**

15.    The answering defendant, if liable at all in this matter, is fifty percent (50%) or less liable and as such, the answering defendant's liability to the plaintiffs for non-economic loss shall not exceed each respective tortfeasor's equitable share determined in accordance with the relative culpability of each person or entity causing or contributing to the total liability for non-economic loss pursuant to Article 16 of the New York State Civil Practice Law and Rules.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:**

16.    All or part of plaintiffs' claimed economic loss may have been paid, replaced or indemnified in whole or in part from collateral sources, or with reasonable certainty will be replaced

or indemnified in the future from such collateral sources, and to that extent, the answering defendant

requests that in the event plaintiffs recover any judgment herein, that said judgment be reduced by

any amounts that have been or may be recovered in whole or in part from collateral sources,

pursuant to CPLR 4545.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

17.    Plaintiffs have received full or partial payment for the injuries alleged in plaintiffs'

Complaint by way of a settlement against the co-defendant or other unnamed defendants, and/or his

insurance company. As such, any judgment which may be rendered against the answering defendant

must be reduced by the amount stipulated by the release between the co-defendant or other unnamed

defendants, and/or his insurance company and plaintiffs, or in the amount of the consideration paid

for it or in the amount of the released tortfeasor's equitable share of the damages under Article 14 of

the New York Civil Practice Laws and Rules, whichever is greatest, pursuant to New York General

Obligation Law §15-108.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

18.    Any injury, loss, and/or damages that may have been sustained by plaintiffs was the

result of an independent, intervening agency or instrumentality over which answering defendant had

no control or right of control.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

19.    The culpable conduct of the plaintiffs, if not the sole cause of damages sustained by

the plaintiffs in the accident alleged in the complaint, contributed to such injuries and damages and

any damages otherwise recoverable by plaintiffs in this action shall be diminished in the proportion

which the plaintiffs' culpable conduct bears to the culpable conduct which caused such damages,

pursuant to Article 14A of the New York State Civil Procedure Law and Rules.

### AS AND FOR AN SIXTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

20.    Plaintiffs have failed to mitigate their damages.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

21.    Some or all of plaintiffs' claims are pre-empted by Federal Law.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

22.    The vehicle referred to in plaintiffs' Complaint conformed to the state of the art and complied with all applicable government regulations and standards.

### AS AND FOR AN NINTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

23.    That at the time of the occurrence alleged in the complaint, the plaintiff had available for her use seatbelts and shoulder harnesses, to restrict her movement within the vehicle in which she was riding, but said plaintiff failed to utilize said device with the result that the injuries and damages to the plaintiff and the extent thereof was increased beyond what it would have been if the aforementioned device had been used by plaintiff.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE, THE ANSWERING DEFENDANT ALLEGES UPON INFORMATION AND BELIEF:

24.    That the defendant, TMS, denies any negligence on its part which was a proximate cause of the injuries alleged in the complaint, but if the defendant, TMS, is found liable to the plaintiff, then such liability will have been brought about by reason of the active and primary negligence of third parties and other tortfeasors, and if the defendant, TMS, is found liable to any degree in this action to the plaintiff, then defendant, TMS, will be entitled to indemnification by and

judgment over and against or contribution from the third parties and other tortfeasors for the full amount of said liability, or for such proportionate share as represents the full amount, degree or kind of negligence attributable to the third-party tortfeasor pursuant to Article 14 of the Civil Practice Law and Rules.

**WHEREFORE**, defendant TOYOTA MOTOR SALES, U.S.A., INC., demands judgment dismissing the plaintiffs' Complaint; or, in the event that the plaintiffs are entitled to recover, that the amount of damages recoverable be diminished in the proportion which the culpable conduct and contributory negligence attributed to plaintiffs bear to the culpable conduct and negligence which caused such damages pursuant to Article 14A; that liability for non-economic loss be limited pursuant to Article 16 of the Civil Practice Law and Rules; that any verdict be reduced pursuant to CPLR 4545 and General Obligations Law §15-108; that liability be apportioned, pursuant to Article 14 of the Civil Practice Law and Rules and TMS receive indemnification and/or contribution in accordance with such apportionment; together with the costs and disbursements of this action; and for such other, further and different relief which may seem just, proper and equitable.

Dated: Buffalo, New York
      February 11, 2008

_/S/_   Robert G. Scumaci  (RS 5343)_
ROBERT G. SCUMACI, ESQ.
Gibson, McAskill & Crosby, LLP
Attorneys for Defendant
TOYOTA MOTOR SALES, U.S.A., INC.
69 Delaware Avenue, Suite 900
Buffalo, New York  14202
(716) 856-4200

TO:    Mitchel H. Ashley, Esq.
        SHANDELL, BLITZ, BLITZ, & ASHLEY, LLP
        Attorneys for Plaintiffs
        150 Broadway
        New York, New York  10038

Page ___ of ___ Pages

Local Codes

06-26834

*Dropped off copy to Lee Titus 12/15/06*

**New York State Department of Motor Vehicles**
# POLICE ACCIDENT REPORT
MV-104A (6/04)

☐ AMENDED REPORT

DMV COPY

| Accident Date | | | Day of Week | Military Time | No. of Vehicles | No. Injured | No. Killed | Not Investigated at Scene ☐ | Left Scene ☐ | Police Photos ☐ |
|---|---|---|---|---|---|---|---|---|---|---|
| Month 12 | Day 15 | Year 06 | FR | 0021 | 2 | 3 | 0 | ☐ Accident Reconstructed | | |

## VEHICLE 1

☑ VEHICLE 2    ☐ BICYCLIST    ☐ PEDESTRIAN    ☐ OTHER PEDESTRIAN

| VEHICLE 1 - Driver License ID Number | 419416969 | State of Lic. NY | VEHICLE 2 - Driver License ID Number | 500172097 | State of Lic. NY |
|---|---|---|---|---|---|
| Driver Name - exactly as printed on license | VANRIPER, C M | | Driver Name - exactly as printed on license | TERRANOVA, CLAUDIA A | |
| Address (Include Number & Street) PO BOX 115 | | Apt. No. | Address (Include Number & Street) 37 HAESSING GLENN RD | | Apt. No. |
| City or Town WASHINGTONVILLE | State NY | Zip Code 10992 | City or Town WALLKILL | State NY | Zip Code 12589 |

| Date of Birth Month 01 | Day 24 | Year 73 | Sex M | Unlicensed ☐ | No. of Occupants 2 | Public Property Damaged ☐ | Date of Birth Month 02 | Day 26 | Year 50 | Sex F | Unlicensed ☐ | No. of Occupants 1 | Public Property Damaged ☐ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Name - exactly as printed on registration WASHINGTONVILLE FIRE DIST. | Sex | Date of Birth Month | Day | Year | Name - exactly as printed on registration TERRANOVA, THOMAS | Sex M | Date of Birth Month 2 | Day 19 | Year 75 |
|---|---|---|---|---|---|---|---|---|---|

| Address (Include Number & Street) PO BOX 56   89 EAST MA | | Haz. Mat. Code | Released ☐ | Address (Include Number & Street) 37 HAESSING GLENN RD | Apt. No. | Haz. Mat. Code | Released ☐ |
|---|---|---|---|---|---|---|---|
| City or Town WASHINGTONVILLE | State NY | Zip Code 10992 | City or Town WALLKILL | State NY | Zip Code 12589 |

| Plate No. | State of Reg. NY | Vehicle Year & Make 2003 CHEV | Vehicle Type SUBN | Ins. Code 095 | Plate No. DSB7240 | State of Reg. NY | Vehicle Year & Make 2007 TOYOT | Vehicle Type 4DSH | Ins. Code 102 |
|---|---|---|---|---|---|---|---|---|---|

| Ticket/Arrest Number(s) | | Ticket/Arrest Number(s) | |
|---|---|---|---|
| Violation Section(s) | | Violation Section(s) | |

**VEHICLE 1**

Check if involved vehicle is:
☐ more than 95 inches wide;
☐ more than 34 feet long;
☐ operated with an overweight permit;
☐ operated with an overdimension permit.

**VEHICLE 2**

Check if involved vehicle is:
☐ more than 95 inches wide;
☐ more than 34 feet long;
☐ operated with an overweight permit;
☐ operated with an overdimension permit.

### VEHICLE 1 DAMAGE CODES
Box 1 - Point of impact    3  3
Box 2 - Most Damage
Enter up to three
more Damage Codes    4  2  2
Vehicle Towed: By QUALITY  To QUALITY

### VEHICLE 2 DAMAGE CODES
Box 1 - Point of impact    1  2
Box 2 - Most Damage
Enter up to three
more Damage Codes    12  2
Vehicle Towed: By ECONO  To ECONO

VEHICLE DAMAGE CODING:
1-13. SEE DIAGRAM ON RIGHT.
14. UNDERCARRIAGE    17. DEMOLISHED
15. TRAILER    18. NO DAMAGE
16. OVERTURNED    19. OTHER

Circle the diagram below that describes the accident, or draw your own diagram in space #9. Number the vehicles.

1. Rear End
2. Left Turn
3. Right Angle (circled)
4. Right Turn
5. Head On
6. Sideswipe (same direction)
7. Left Turn
8. Right Turn
9. Sideswipe (opposite direction)

ACCIDENT DIAGRAM

Cost of repairs to any one vehicle will be more than $1000.
☐ Unknown/Unable to Determine    ☑ Yes    ☐ No

| Reference Marker 300 | Coordinates (if available) Latitude/Northing | Place Where Accident Occurred: County ORAN    ☐ City    ☐ Village    ☑ Town of NEWBURGH |
|---|---|---|
| 8302 | | Road on which accident occurred RT 300 (Route Number or Street Name) |
| 1084 | Longitude/Easting | at 1) intersecting street (Route Number or Street Name) |
| | | or 2) 300  Feet ☐ Miles ☐N ☐S ☑E ☐W of RT 17K (Route Number or Street Name) |

Accident Description/Officer's Notes  VEH 1 SOUTH BOUND RT 300. VEH 2 EAST BOUND CROSSING RT 300. VEH 2 FAILED TO YIELD RIGHT-OF-WAY TO VEH 1. VEH 1 STRUCK VEH 2.

| | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | BY | TO | 18 | Names of all involved | Date of Death Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 1 | | 7 | | 33 | M | | 12 | 6 | | — | | TO | DRIVER 1 | — |
| B | 1 | 3 | 7 | | 45 | M | | 10 | 6 | 9995 | 3509 | | | DECKER, CHARLES JR | — |
| C | 1 | | | | 56 | F | | 10 | 2 | 9999 | 3011 | | | DRIVER 2 | — |
| D | | | | | | | | | | | | | | | |
| E | | | | | | | | | | | | | | | |
| F | | | | | | | | | | | | | | | |

| Officer's Rank and Signature ▶ PO Vasquez | Print Name In Full PO VASQUEZ | Badge/ID No. 22000 | NCIC No. 3563 | Precinct/Post Troop/Zone | Station/Beat/Sector | Reviewing Officer  SGT. [signature] #08 | Date/Time Reviewed 12/15/06  0650 |
|---|---|---|---|---|---|---|---|

N

# TOWN OF NEWBURGH POLICE DEPARTMENT

300 Gardnertown Road, Newburgh, NY 12550
(845)564-1100

## *MOTOR VEHICLE ACCIDENT COURTESY INFORMATION RECORD*

Police Complaint # 06 - 26834    Date of Accident 12 - 15 - 06    Time 0021    (AM) PM

Police Accident Report (MV-104A) Taken?  Yes ☑  No ☐

Location of Accident  RT 300

**Oper. Veh. #1** VANRIPER, C M

Date of Birth 11-09-73 /License # 419416969

Address PO BOX 115

WASHINGTONVILLE, NY 10992

Reg. Owner WASHINGTONVILLE FIRE DISTRICT

Address PO BOX 56 89 EAST MA

WASHINGTONVILLE NY 10992

Lic. Plate # _____ State _____

Yr./Make/Exp. 2003 CHEV

Ins. Code & Exp. 095    01/07

Ins. Policy # CM101242501

~~Phone #~~ DECKER, CHARLES JR FP (45)

**Oper. Veh. #2** TERRANOVA, CLAUDIA

Date of Birth 02-26-50 /License # 500172097

Address 37 HAESSING GLENN RD

WALLKILL, NY 12589

Reg. Owner 02-19-47 TERRANOVA THOMAS W

Address ABOVE

Lic. Plate # DSB7240    State NY

Yr./Make/Exp. 2007 TOYOT

Ins. Code & Exp. 102    03/07

Ins. Policy # 260857337

Phone # _____

**Oper. Veh. #3** _____

Date of Birth _____ /License # _____

Address _____

_____

Reg. Owner _____

Address _____

_____

Lic. Plate # _____ State _____

Yr./Make/Exp. _____

Ins. Code & Exp. _____

Ins. Policy # _____

Phone # _____

**Oper. Veh. #4** _____

Date of Birth _____ /License # _____

Address _____

_____

Reg. Owner _____

Address _____

_____

Lic. Plate # _____ State _____

Yr./Make/Exp. _____

Ins. Code & Exp. _____

Ins. Policy # _____

Phone # _____

Investigating Police Officer: PO VASQUEZ    , Shield # 317

FEB-14-2008 10:28    BRANTLEY CONST CO    843 552 9072    P.02/03

NEW YORK

NEW YORK PLU CAR    6/13/06    06/13/2006

Lease Date

**Parties**

LESSOR (DEALER) NAME AND ADDRESS

TOYOTA OF NEWBURGH
2934 RT 9W
NEW WINDSOR NY 12553
PHONE NUMBER:    (845)561-0340

LESSEE AND CO-LESSEE NAME AND
ADDRESS

CLAUDIA A TERRANOVA
37 HAESSIG GLENN ROAD
WALLKILL NY 12589
COUNTY:    ULSTER

VEHICLE GARAGING ADDRESS, IF DIFFERENT
THAN LESSEE'S BILLING ADDRESS

COUNTY:

This is a Lease for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, and after assignment, Toyota Motor Credit Corporation ("TMCC") and any subsequent assignee. By signing this Lease, you are leasing this Vehicle according to all of the terms of this Lease.

2. Description of Leased Vehicle.
You are leasing from us and we have received in satisfactory condition, the following Vehicle:

| New, Used or Demo | Year | Make | Model | Body Style | Vehicle Identification No. | Odometer Mileage |
|---|---|---|---|---|---|---|
| NEW | 2007 | TOYOTA | CAMRY | 4DR | 4T1BE46K67U548140 | 10 |

Primary Use: ☑ Personal, Family or Household   ☐ Business, Agricultural or Commercial

| 3. Amount Due at Lease Signing or Delivery (Itemized in Section 7 below) $ 2000.00 | 4. Monthly Payments Your first Monthly Payment of $ 275.59 is due on 08/13/2006 followed by 47 payments of $ 275.59 due on the 13th of each month. The total of your Monthly Payments is $ 13236.32 | 5. Other Charges (not part of your Monthly Payment) Disposition fee (if you do not purchase the Vehicle) $ N/A Total $ N/A | 6. Total of Payments (The amount you will have paid by the end of the Lease) $ 14952.73 |

7. Amount Due at Lease Signing or Delivery:    514.91
a. Capitalized Cost Reduction    $ 275.59
b. First Monthly Payment    $ N/A
c. Refundable Security Deposit    $ N/A
d. Title Fees    $ 100.00
e. Registration Fees    $ 10.00
f. License Fees    $ N/A
g. Tax on Capitalized Cost Reduction    $ N/A
h. Acquisition Fee    $
i. DIFFERENT TAXES    $ 1044.50
k. Total    $ 2000.00

8. How the Amount Due at Lease Signing or Delivery will be paid:
a. Net Trade-in Allowance    $ N/A
b. Rebates and Noncash Credits    $ 2000.00
c. Amount to be Paid in Cash    $

d. Total    $ 2000.00

9a. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ _____ ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13.    $ 20845.90

b. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost.    – $ 514.91

c. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment.    $ 20330.99

d. Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment.    $ 11275.00

e. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.    $ 9055.99

f. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts.    + $ 4172.33

g. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge.    = $ 13228.32

h. Lease Payments. The number of payments in your Lease.    ÷ 48

i. Base Monthly Payment.    = $ 275.59

j. Monthly Sales/Use Tax    + $ N/A

k. Total Monthly Payment (Monthly payment)    = $ 275.59

Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

10. Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 48000 miles over the odometer mileage disclosed above, at the rate of 00.15 per mile.

11. Purchase Option at End of Lease Term. You have an option to purchase the Vehicle at the end of the Lease Term for $ 11275.00

12. Other Important Terms. See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

13. Itemization of Gross Capitalized Cost.
You will pay for the following items over the Lease Term as part of your Monthly Payment.
a. Agreed Upon Value of the Vehicle    20392.21
b. Taxes    + 471.19
c. Initial Title, License and Registration Fees    + N/A
d. Mechanical Breakdown Protection and/or Maintenance Agreement    + N/A
e. Credit Life and/or Disability Insurance    +

16. Warranty
If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new vehicle warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless identified below:
☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer
☐ Used vehicle warranty from Lessor
OTHER THAN THE MANUFACTURER'S AND/OR LESSOR'S WARRANTY ABOVE, YOU ARE LEASING THE VEHICLE "AS IS" AND

FEB-14-2008  10:29    BRANTLEY CONST CO                843 552 9072    P.03/03

h. Acquisition Fee ................................ +    42.50
i.   N/A ................................................ +    N/A
j.   .................................................... +    20810.00
k. Gross Capitalized Cost

**14. Lease Term and Scheduled Maturity Date**
The Lease Term of this Lease is _____ months, and the
Scheduled Maturity Date of this Lease is 05/13/20____

**15. Required Insurance**
You must provide the following insurance during the Lease Term, with
the Lessee and/or Co-Lessee as an insured driver. No other types of
insurance are required:
a)   primary automobile liability insurance with minimum limits for bodily
     injury or damage:
     i)   $  100000.00   for any one person, and
     ii)  $  300000.00   for any one accident, and
     iii) $  50000.00    for property damage; and
b)   physical damage insurance for the full value of the Vehicle, with a
     maximum deductible of $1,000.

See Section 24 for additional information.

You have provided us today with the following insurance information:

| Insurance Provider | Policy No. | Insurance Coverage Verification By: Dealer Employee |
|---|---|---|

| Agent's Name / Address | Agent's Phone No. |
|---|---|
|  | 1.318.13 |

**16. Estimated Official Fees and Taxes**
This is an estimate of the total amount you will pay over the Lease Term
for official and license fees, registration, title, and taxes (including per-
sonal property taxes), whether included in your Total Monthly Payment
(Section 9.f), the Amount Due at Lease Signing or Delivery (Section 7)
or billed separately. The actual total of Official Fees and Taxes may be
higher or lower than this estimate depending on the tax rates in effect or
the value of the Vehicle at the time a fee or tax is assessed. This esti-
mate is based on your current address and may increase if you
move or if tax rates change. You are responsible for paying any
increases. See Section 26 for additional information.

**17. Vehicle Maintenance and Damage**
You are responsible for all maintenance, repair, service, and operating
expenses of the Vehicle. You agree to follow the owner's manual and
maintenance schedule, and to provide us with written proof of such
maintenance. You are responsible for all damage to the Vehicle and
for its loss, seizure or theft. You must tell us immediately if any of these
events happen, and cooperate with your insurance company.

**19. Optional Insurance and Other Products**
You are not required to buy any of the Optional Insurance or Other
Products listed below to enter into this Lease, and they are not a factor
in our credit decision. These insurance and other products will not be
provided unless the appropriate box is checked, all information is filled
in, your initial below, and you are accepted by the Provider. By your ini-
tials below, you agree that you have received a notice of the terms of
the insurance or product, and you want to obtain the insurance or prod-
uct for the premium or charge shown. A portion of the premium or
charge shown may be retained by the Lessor (Dealer).

☐ Optional Credit Life Insurance            $ _____
   N/A                                    N/A
   Insured(s)                          Beginning Coverage
   _____  $ _____  _____
   Provider          Premium    Lessee / Co-Lessee Initials

☐ Optional Credit Disability Insurance      $ _____
   N/A                                    N/A
                                        Maximum Monthly Coverage
   _____  $ _____  _____
   Provider          Premium    Lessee / Co-Lessee Initials

☐ Optional Mechanical              N/A    ____ miles / ____ months
   Breakdown Protection                 Coverage
   N/A
   _____  $ _____  _____
   Provider          Premium    Lessee / Co-Lessee Initials

☐ Optional GAP Waiver (see Section 33)      N/A
   _____  $ _____  _____
   Provider          Premium or Charge  Lessee / Co-Lessee Initials

☐ Optional Maintenance Agreement            N/A
   _____  $ _____  _____
   Provider          Premium or Charge  Lessee / Co-Lessee Initials

Total Premiums and Charges    $ _____

**20. Complete Agreement or Modification**
By your initials, you acknowledge that this Lease contains the entire
agreement for the Lease of this Vehicle. There are no other agree-
ments. Any change to this Lease must be in writing and signed by you
and by us.
                                    _____
                                    Lessee / Co-Lessee Initials

**21. Agreement to Arbitrate**
By initialing below, you agree that at the request of either you or
us any controversy or claim (defined in Section 47 of this Lease)
between you and us shall be determined by neutral binding arbi-
tration. See Section 47 for further terms and conditions.
                                    _____
                                    Lessee / Co-Lessee Initials

**New York State Motor Vehicle Retail Leasing Act Disclosures:**

Capitalized Cost. (The sum of the Adjusted Capitalized Cost and the Capitalized Cost Reduction. The Capitalized Cost and the
amount of the Base Monthly Payment may be negotiable.) (Same as Gross Capitalized Cost, Section 9.a).                        $ _____
Adjusted Capitalized Cost. (The amount which is capitalized in connection with the Lease and is used in determining the amount of
your Base Monthly Payment. This amount will be used in determining the legal limit on your early termination liability. Although the
"Adjusted Capitalized Cost" is not referred to in the early termination provisions of this Lease, the "Adjusted Capitalized Cost" may be
used to compare the early termination provisions of competing lessors.) (Same as Section 9.c.).                              $ _____
Estimated Residual Value. (Same as Residual Value, Section 9.d.)                                                             $ _____

**Lessee Signatures and Notices**

By signing below, you acknowledge that: (1) You have read the entire Lease, including the back side; (2) You agree to all of the provisions of this
Lease; (3) This is a lease; you have no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this
Lease.
**WARNING: Important consumer protections may not apply if this agreement indicates that you are leasing the Vehicle primarily for agricultural,
business or commercial use.**
**NOTICE TO LESSEE: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a
completely filled in copy of this agreement when you sign it.**
You acknowledge that you have received a completely filled in copy of this Lease.

**MOTOR VEHICLE LEASE AGREEMENT**

Lessee Signature _____    Co-Lessee Signature _____

**Notice Regarding Assignment.** As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary.
Lessor is hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle.
The Lessor hereby accepts this Lease and assigns to Toyota Motor Credit Corporation all rights, title and interest in the Lease and in the Vehicle, and
Lessor's rights under any guaranty executed in connection with this Lease, with full powers to Toyota Motor Credit Corporation to collect and discharge
all obligations related to this Lease, any guaranty, and this assignment.
Lessor  TOYOTA OF NEWBURGH    By _____    Title _____    Date _____

New York          **PLEASE READ THE BACK SIDE FOR ADDITIONAL TERMS AND CONDITIONS**          009ENY 11/05

PREVIOUS EDITIONS MAY NOT BE USED
LESSOR COPY

TOTAL P.03

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index # 2007-12229                                     Purchased/Filed: December 26, 2007

STATE OF NEW YORK                    SUPREME COURT                    ORANGE COUNTY

---

*Claudia Terranova et ano*                                         Plaintiff

against

*Toyota of Newburgh et ano*                                        Defendant

---

STATE OF NEW YORK          SS.:
COUNTY OF ALBANY

_____ Jessica Miller _____, being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ January 24, 2008 _____, at __2:00pm__, at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Verified Complaint

on

_____ Toyota of Newburgh nka Autos of Newburgh, Inc. sha Toyota of Newburgh _____, the

Defendant in this action, by delivering to and leaving with _____ Chad Matice _____,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, __2__ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of ___40___ dollars; That said service

was made pursuant to Section 306 Business Corporation Law .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served:  Approx. Age: __28__   Approx. Wt: __200__   Approx. Ht: __6'0"__

Color of skin: __White__   Hair color: __Brown__   Sex: __M__   Other: _____

Sworn to before me on this

__28th__ day of _____ January, 2008 _____

_____                    Jessica Miller

DONNA M. TIDINGS
NOTARY PUBLIC, State of New York
No. 01TI4898570, Qualified in Albany County
Commission Expires June 15, 2011

Invoice•Work Order # SP0800715

**SERVICO, INC. - PO BOX 871 - ALBANY, NEW YORK 12201 - PH 518-463-4179**

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: TOYOTA OF NEWBURGH, INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | AUTOS OF NEWBURGH, INC. |
| **Initial DOS Filing Date:** | MAY 12, 1971 |
| **County:** | WESTCHESTER |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
PETER M EDELSTEIN
491 LEXINGTON AVENUE
MT KISCO, NEW YORK, 10549

**Chairman or Chief Executive Officer**
GEORGE E GAILLARD
39 ROE AVE
CORNWALL ON HUDSON, NEW YORK, 12520

**Principal Executive Office**
AUTOS OF NEWBURGH, INC.
2934 ROUTE 9W
NEW WINDSOR, NEW YORK, 12553

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results     New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

# NYS Department of State

## Division of Corporations

## Entity Information

Selected Entity Name: HOMETOWN NEWBURGH, INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | HOMETOWN NEWBURGH, INC. |
| **Initial DOS Filing Date:** | DECEMBER 22, 1998 |
| **County:** | ORANGE |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O MORSE ZELNICK ROSE & LANDER LLP
ATTN S ZELNICK ESQ
450 PARK AVE
NEW YORK, NEW YORK, 10022

**Chairman or Chief Executive Officer**
COREY SHAKER
774 STRAITS TPKE
WATERTOWN, CONNECTICUT, 06795

**Principal Executive Office**
HOMETOWN AUTO RETAILERS INC
774 STRAITS TPKE
WATERTOWN, CONNECTICUT, 06795

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

<u>Search Results</u>          <u>New Search</u>

<u>Division of Corporations, State Records and UCC Home Page</u>     <u>NYS Department of State Home Page</u>

# SBBA

**SHANDELL · BLITZ · BLITZ & ASHLEY, LLP**
ATTORNEYS AT LAW

150 BROADWAY  NEW YORK, N.Y. 10038-4369  TEL: (212) 513-1300  FAX: (212) 385-1916  info@shandellblitz.com
www.shandellblitz.com

RICHARD E. SHANDELL
BERT A. BLITZ
OF COUNSEL

ARTHUR BLITZ*
MITCHEL H. ASHLEY
———
JUSTIN M. BLITZ
TARA M. VRETTOS
———
STEWART G. MILCH
MANAGING ATTORNEY

*ALSO ADMITTED IN PENNSYLVANIA

LEGAL ASSISTANTS
MARIA SALADINO
MELISSA CASTILLO

February 29, 2008

Clerk of the Court
Supreme Court, Orange County
255 Main Street
Goshen, NY  10924

                    Re:    Terranova v. Toyota.
                           Our File No.: 07-0311
                           Index No. 12229/07

Dear Sir and/or Madam:

Enclosed herewith please find original and one copy of Supplemental Summons and Amended Verified Complaint in the above matter.  Please file same with the Court on our behalf and provide us with a conformed copy in the self-addressed stamped envelope also enclosed.

If anything further is required with regard to the above, please do not hesitate to contact us.

                    Very truly yours,

                    SHANDELL, BLITZ, BLITZ & ASHLEY, LLP



                    Mitchel H. Ashley

MHA/yc
Encl.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

|  |  |
|---|---|
| CLAUDIA TERRANOVA and THOMAS TERRANOVA,<br><br>Plaintiffs,<br><br>-against-<br><br>TOYOTA OF NEWBURGH, TOYOTA MOTOR SALES,<br>U.S.A., INC., HOMETOWN AUTO RETAILERS, INC.,<br>HOMETOWN NEWBURGH, INC., HOMETOWN<br>NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH and<br>GEORGE GAILLARD,<br><br>Defendants. | Index No. 12229/07<br>Date Purchased: 12/20/07<br><br>Plaintiffs designate Orange as the place of trial.<br><br>The basis of the venue is Defendant, TOYOTA OF NEWBURGH's principal place of business.<br><br>**SUPPLEMENTAL SUMMONS**<br><br>Plaintiffs reside at<br>102 Long Cove Bend<br>Pine Forest County Club<br>Summerville, SC 29483 |

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with the summons, to serve a notice of appearance, on Plaintiff(s) Attorneys within 20 days after the service of the summons, exclusive of the day of service (or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, a judgment will be taken against you by default for the relief demanded in this complaint.

Dated:  New York, New York
        February 29, 2008.

Mitchel H. Ashley, Esq.
SHANDELL, BLITZ, BLITZ
  & ASHLEY, LLP
Attorneys for Plaintiffs
150 Broadway
New York, NY  10038
(212) 513-1300

Defendant(s)' Address:

Toyota of Newburgh
2934 Rte. 9W
New Windsor, NY  12553

Toyota Motor Sales, U.S.A., Inc.
19001 South Western Avenue
Torrance, CA  90501

Hometown Auto Retailers
Secretary of State

Hometown Newburgh
2934 Rte. 9W
New Windsor, NY  12553

Hometown d/b/a Toyota Newburgh
2934 Rte. 9W
New Windsor, NY  12553

George Gaillard
2934 Rte. 9W
New Windsor, NY  12553

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

Index No. 12229/07

| |
|---|
| CLAUDIA TERRANOVA and THOMAS TERRANOVA,<br><br>          Plaintiffs,<br><br>          -against-<br><br>TOYOTA OF NEWBURGH, TOYOTA MOTOR SALES, U.S.A., INC., HOMETOWN AUTO RETAILERS, INC., HOMETOWN NEWBURGH, INC., HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH and GEORGE GAILLARD,<br><br>          Defendants. |

**_AMENDED VERIFIED_**
**_COMPLAINT_**

Plaintiffs, complaining of the defendants, by their attorneys, SHANDELL, BLITZ,

BLITZ & ASHLEY, LLP, respectfully state and allege, upon information and belief:

AS AND FOR A FIRST CAUSE OF ACTION:

1. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH,

was a foreign corporation duly organized and existing under and by virtue of the laws of one or

more States of the United States.

2. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH

was a domestic corporation duly authorized to do business in the State of New York.

3. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH

was in the business of designing automobiles and appurtenances thereto.

4. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of manufacturing automobiles and appurtenances thereto.

5. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of assembling automobiles and appurtenances thereto.

6. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of selling automobiles and appurtenances thereto.

7. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of distributing automobiles and appurtenances thereto.

8. That defendant, TOYOTA OF NEWBURGH expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

9. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of designing airbags and appurtenances thereto.

10. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of manufacturing airbags and appurtenances thereto.

11. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of assembling airbags and appurtenances thereto.

12. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH, was in the business of selling airbags and appurtenances thereto.

13. That at all times hereinafter mentioned, defendant TOYOTA OF NEWBURGH was in the business of distributing airbags and appurtenances thereto.

14. That defendant, TOYOTA OF NEWBURGH expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.FIFTEENTH:

15. That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was a foreign corporation duly organized and existing under and by virtue of the laws of one or more States of the United States.

16. That at all times hereinafter mentioned, defendant TOYOTA MOTOR SALES, U.S.A., INC., was a domestic corporation duly authorized to do business in the State of New York.

17. That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of designing automobiles and appurtenances thereto.

18. That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of manufacturing automobiles and appurtenances thereto.

19. That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of assembling automobiles and appurtenances thereto.

20. That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of selling automobiles and appurtenances thereto.

21. That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of distributing automobiles and appurtenances thereto.

22. That defendant, TOYOTA MOTOR SALES, U.S.A., INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

23.    That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of designing airbags and appurtenances thereto.

24.    That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of manufacturing airbags and appurtenances thereto.

25.    That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of assembling airbags and appurtenances thereto.

26.    That at all times hereinafter mentioned, defendant TOYOTA MOTOR SALES, U.S.A., INC., was in the business of selling airbags and appurtenances thereto.

27.    That at all times hereinafter mentioned, defendant, TOYOTA MOTOR SALES, U.S.A., INC., was in the business of distributing airbags and appurtenances thereto.

28.    That defendant, TOYOTA MOTOR SALES, U.S.A., INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.

29.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was a foreign corporation duly organized and existing under and by virtue of the laws of one or more States of the United States.

30.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was a domestic corporation duly authorized to do business in the State of New York.

31.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of designing automobiles and appurtenances thereto.

32.    That at all times hereinafter mentioned, defendant HOMETOWN AUTO RETAILERS, INC., was in the business of manufacturing automobiles and appurtenances thereto.

33.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of assembling automobiles and appurtenances thereto.

34.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of selling automobiles and appurtenances thereto.

35.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of distributing automobiles and appurtenances thereto.

36.    That defendant, HOMETOWN AUTO RETAILERS, INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

37.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of designing airbags and appurtenances thereto.

38.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of manufacturing airbags and appurtenances thereto.

39.    That at all times hereinafter mentioned, defendant HOMETOWN AUTO RETAILERS, INC., was in the business of assembling airbags and appurtenances thereto.

40.    That at all times hereinafter mentioned, defendant, HOMETOWN AUTO RETAILERS, INC., was in the business of selling airbags and appurtenances thereto.

41.    That at all times hereinafter mentioned, defendant HOMETOWN AUTO RETAILERS, INC., was in the business of distributing airbags and appurtenances thereto.

42. That defendant, HOMETOWN AUTO RETAILERS, INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.

43. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was a foreign corporation duly organized and existing under and by virtue of the laws of one or more States of the United States.

44. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was a domestic corporation duly authorized to do business in the State of New York.

45. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of designing automobiles and appurtenances thereto.

46. That at all times hereinafter mentioned, defendant HOMETOWN NEWBURGH, INC., was in the business of manufacturing automobiles and appurtenances thereto.

47. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of assembling automobiles and appurtenances thereto.

48. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of selling automobiles and appurtenances thereto.

49. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of distributing automobiles and appurtenances thereto.

50. That defendant, HOMETOWN NEWBURGH, INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

51. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of designing airbags and appurtenances thereto.

52. That at all times hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of manufacturing airbags and appurtenances thereto.

53. That at all times hereinafter mentioned, defendant HOMETOWN NEWBURGH, INC., was in the business of assembling airbags and appurtenances thereto.

54. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of selling airbags and appurtenances thereto.

55. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., was in the business of distributing airbags and appurtenances thereto.

56. That defendant, HOMETOWN NEWBURGH, INC., expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.

57. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was a foreign corporation duly organized and existing under and by virtue of the laws of one or more States of the United States.

58. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was a domestic corporation duly authorized to do business in the State of New York.

59. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of designing automobiles and appurtenances thereto.

60. That at all time hereinafter mentioned, defendant HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of manufacturing automobiles and appurtenances thereto.

61. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of assembling automobiles and appurtenances thereto.

62. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of selling automobiles and appurtenances thereto.

63. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of distributing automobiles and appurtenances thereto.

64. That defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its vehicles.

65. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of designing airbags and appurtenances thereto.

66. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of manufacturing airbags and appurtenances thereto.

67. That at all time hereinafter mentioned, defendant HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of assembling airbags and appurtenances thereto.

68. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of selling airbags and appurtenances thereto.

69. That at all time hereinafter mentioned, defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, was in the business of distributing airbags and appurtenances thereto.

70. That defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH, expressly or impliedly assumed all the liability and obligations referable to the design, manufacture, advertising, distribution, inspection, assembling, labeling, instructing, engineering and warning on its airbags.

71. That at all time hereinafter mentioned, defendant, GEORGE GAILLARD (hereinafter referred to as "GAILLARD"), was a partner in the business of defendant, TOYOTA OF NEWBURGH.

72. That at all time hereinafter mentioned defendant, "GAILLARD", was an officer in the business of defendant, TOYOTA OF NEWBURGH.

73. That at all time hereinafter mentioned defendant, "GAILLARD", was an employee in the business of defendant, TOYOTA OF NEWBURGH.

74. That at all time hereinafter mentioned defendant, "GAILLARD", was a director in the business of defendant, TOYOTA OF NEWBURGH.

75. That at all time hereinafter mentioned, defendant, "GAILLARD", was a partner in the business of defendant, TOYOTA MOTOR SALES, U.S.A., INC.

76. That at all time hereinafter mentioned defendant, "GAILLARD", was an officer in the business of defendant, TOYOTA MOTOR SALES, U.S.A., INC.

77. That at all time hereinafter mentioned defendant, "GAILLARD", was an employee in the business of defendant, TOYOTA MOTOR SALES, U.S.A., INC..

78. That at all time hereinafter mentioned defendant, "GAILLARD", was a director in the business of defendant, TOYOTA MOTOR SALES, U.S.A., INC.

79. That at all time hereinafter mentioned, defendant, "GAILLARD", was a partner in the business of defendant, HOMETOWN AUTO RETAILERS, INC.

80. That at all time hereinafter mentioned defendant, "GAILLARD", was an officer in the business of defendant, HOMETOWN AUTO RETAILERS, INC.

81. That at all time hereinafter mentioned defendant, "GAILLARD", was an employee in the business of defendant, HOMETOWN AUTO RETAILERS, INC.

82. That at all time hereinafter mentioned defendant, "GAILLARD", was a director in the business of defendant, HOMETOWN AUTO RETAILERS, INC.

83. That at all time hereinafter mentioned, defendant, "GAILLARD", was a partner in the business of defendant, HOMETOWN NEWBURGH, INC.

84. That at all time hereinafter mentioned defendant, "GAILLARD", was an officer in the business of defendant, HOMETOWN NEWBURGH, INC.

85. That at all time hereinafter mentioned defendant, "GAILLARD", was an employee in the business of defendant, HOMETOWN NEWBURGH, INC.

86. That at all time hereinafter mentioned defendant, "GAILLARD", was a director in the business of defendant, HOMETOWN NEWBURGH, INC.

87. That at all time hereinafter mentioned, defendant, "GAILLARD", was a partner in the business of defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

88. That at all time hereinafter mentioned defendant, "GAILLARD", was an officer in the business of defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

89. That at all time hereinafter mentioned defendant, "GAILLARD", was an employee in the business of defendant, HOMETOWN NEWBURGH, INC. , d/b/a TOYOTA OF NEWBURGH.

90. That at all time hereinafter mentioned defendant, "GAILLARD", was a director in the business of defendant, HOMETOWN NEWBURGH, INC. , d/b/a TOYOTA OF NEWBURGH.

91. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", owned defendant, TOYOTA OF NEWBURGH.

92. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", operated defendant, TOYOTA OF NEWBURGH.

93. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", managed defendant, TOYOTA OF NEWBURGH.

94. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", controlled defendant, TOYOTA OF NEWBURGH.

95. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", directed defendant, TOYOTA OF NEWBURGH.

96. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", owned defendant, TOYOTA MOTOR SALES, U.S.A., INC.

97. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", operated defendant, TOYOTA MOTOR SALES, U.S.A., INC.

98. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", managed defendant, TOYOTA MOTOR SALES, U.S.A., INC.

99. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", controlled defendant, TOYOTA MOTOR SALES, U.S.A., INC.

100. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", directed defendant, TOYOTA MOTOR SALES, U.S.A., INC.

101. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", owned defendant, HOMETOWN AUTO RETAILERS, INC.

102. Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", operated defendant, HOMETOWN AUTO RETAILERS, INC.

103.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", managed defendant, HOMETOWN AUTO RETAILERS, INC.

104.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", controlled defendant, HOMETOWN AUTO RETAILERS, INC.

105.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", directed defendant, HOMETOWN AUTO RETAILERS, INC.

106.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", owned defendant, HOMETOWN NEWBURGH, INC.

107.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", operated defendant, HOMETOWN NEWBURGH, INC.

108.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", managed defendant, HOMETOWN NEWBURGH, INC.

109.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", controlled defendant, HOMETOWN NEWBURGH, INC.

110.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", directed defendant, HOMETOWN NEWBURGH, INC.

111.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", owned defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

112.     Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", operated defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

113.   Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", managed defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

114.   Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", controlled defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

115.   Upon information and belief, and at all times hereinafter mentioned, defendant, "GAILLARD", directed defendant, HOMETOWN NEWBURGH, INC., d/b/a TOYOTA OF NEWBURGH.

116.   That at all times hereinafter mentioned, the plaintiffs herein were the lessees of a Toyota Camry bearing plate number DSB7240 for the year 2007 and Vehicle Identification Number 4T1BE46K67U540140.

117.   That at all times hereinafter mentioned, the plaintiff, CLAUDIA TERRANOVA was the operator of a Toyota Camry bearing plate number DSB7240 for the year 2007 and Vehicle Identification Number 4T1BE46K67U540140.

118.   That at all times hereinafter mentioned, defendants designed, manufactured and distributed the vehicle identified above in paragraphs "116" and "117".

119.   That at all times hereinafter mentioned, defendants designed, manufactured and distributed the airbag contained in the vehicle identified above in paragraphs "116" and "117".

120.   That at all times hereinafter mentioned, defendants owed certain duties to the plaintiffs with respect to the design, manufacture, engineering, assembling, distribution, advertising,

labeling, instructing, warning and offering for sale the subject vehicle which proved to be unsafe, unfit and hazardous for use.

121.  That at all times hereinafter mentioned, defendants owed certain duties to the plaintiffs with respect to the design, manufacture, engineering, assembling, distribution, advertising, labeling, instructing, warning and offering for sale the subject airbag which proved to be unsafe, unfit and hazardous for use.

122.  That on or about the 15th day of December 2006, at approximately 9:00 p.m., while plaintiff, CLAUDIA TERRANOVA, was operating the aforementioned Toyota Camry, on Route 300 at its intersection with Route 17K in the Town of Newburgh, County of Orange, State of New York, said vehicle came in contact with another vehicle causing plaintiff to suffer severe personal injuries and grievous permanent personal injuries.

123.  That the aforementioned accident occurred without any negligence on the part of the plaintiffs contributing thereto.

124.  That it was the duty of the defendants to design and market the aforesaid vehicle and sell said vehicle in good safe condition so as not to endanger the life and limbs of any persons, including plaintiff, who was lawfully and properly using same therein and to give due and timely notice or warning of any attendant peril or danger.

125.  That it was the duty of the defendants to design and market the aforesaid airbag and sell said airbag in good safe condition so as not to endanger the life and limbs of any persons, including plaintiff, who was lawfully and properly using same therein and to give due and timely notice or warning of any attendant peril or danger.

126.    That the said accident and injuries resulting therefrom were due to the recklessness, carelessness and negligence of the defendants their agents, servants and/or employees, in the manufacturing, engineering, assembling, building, inspecting, testing, design, and selling and distribution of the aforesaid vehicle and airbag; in that they failed to use proper, sufficient and good material in the construction, manufacturing, engineering, assembling, building, inspecting, testing, designing, selling and distribution of the aforesaid vehicle and airbag; in manufacturing, engineering, assembling, building, inspecting, designing, selling and distributing said vehicle and airbag so that it was inherently dangerous, improper, dangerous and defective in the engineering concept and design; that said vehicle and airbag was manufactured, engineered, assembled, built, inspected, tested, designed, sold and distributed in a dangerous and defective manner; in failing to protect the occupant adequately and properly against impact; in failing to properly and adequately protect occupant and user of the vehicle and airbag against foreseeable injuries; in manufacturing, engineering, assembling, building, inspecting, testing, designing, selling and distributing an inherently dangerous vehicle and airbag; in that said vehicle and airbag were inherently dangerous and defective in manufacture, engineering, assembling, building, inspecting, testing, designing, selling and distributing the aforesaid vehicle and airbag in that said vehicle and airbag were unsafe; in that the defendants held their product out to the purchaser of same that it could be used with safety; in failing to warn of the defects; in that the defendants knew of the defective condition or by reason of inspection should have known that such defects were dangerous and would cause injury to the user and occupants and users of this vehicle and airbag; in failing to adequately test the said vehicle and airbag; in failing to design, construct, engineer and install a safe and proper vehicle and airbag; in holding out and representing to the public that the said vehicle and airbag were safe, proper and fit for the use intended and of merchantable quality; in fact, the said defendants placed

the vehicle and airbag in the channels of commerce without properly testing and inspecting same for defects and hazards contained therein; in causing, allowing and permitting the said vehicle and airbag to be distributed and sold without sufficient and proper testing for safety and its design; in failing to warn the general public and the plaintiff of the defects contained therein; and in otherwise being careless and negligent.

127.    That as a result of the negligence and carelessness of the defendants herein, plaintiff sustained severe and grievous personal injuries as defined by Section 5102(d) of the Insurance Law, or economic loss greater than basic economic loss, as defined in Section 5102(d) of the Insurance Law.

128.    That plaintiff is a covered person as defined by Section 5102(d) of the Insurance Law of the State of New York.

129.    That as a result of the foregoing, plaintiff was rendered sick, sore, lame and disabled; suffering injuries both internal and external; suffered pain and anguish; suffered loss of enjoyment of life; was confined to her bed and home for a lengthy period of time; was compelled to seek medical care and attention and, upon information and belief, will in the future be compelled to seek medical care and attention; was prevented from following her usual occupation and incurred lost earnings as a result thereof and upon information and belief, will in the future, be disabled from following her usual occupation and was otherwise injured and damaged.

130.    That this action falls within one or more of the exceptions set forth in CPLR 1602.

131.    That by reason of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

132.   That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

## AS AND FOR A SECOND CAUSE OF ACTION:

133.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "130" of the first cause of action inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

134.   That at the time of the manufacture, engineering, design, sale, assembly, use, distribution, inspection and testing of the aforesaid products by defendants, said defendants had full knowledge that the said product would be used for the purposes for which they were intended and said defendants represented and warranted to plaintiff and to any other potential, ultimate user of said products that said product were safe, suitable and fit for all purposes intended and that said products were in a good, safe, fit and merchantable condition.

135.   That Plaintiff relied upon the knowledge, judgment and skill of the defendants in the manufacture, engineering, design, sale, assembly, use, distribution, inspection and testing of said products and the selection and use of strong, suitable, adequate, safe and proper materials and mechanism.

136.   That plaintiff relied upon the representations, knowledge, judgment and skill of the defendants in the inspection and testing of said products.

137.   That contrary to representations and warranties of defendants, said products had not been adequately tested and was not free from dangerous and latent defects in the

manufacture, engineering, design, sale, assembly, use and distribution, maintenance, inspection and testing thereof.

138.    That defendants violated and breached said implied warranties and said products were not of good quality, were not free from defects, were not fit or merchantable, were not fit or suitable for all purposes intended, and were not designed in a good, safe and proper manner and were not manufactured, constructed, designed, sold, assembled, used, distributed, maintained, inspected and tested in a good, safe and fit manner or with good, safe, fit or merchantable components.

139.    The fact that said products were not merchantable, unfit for the purposes intended and had latent defects therein could not be discovered by plaintiff.

140.    As a result of the defendants' breach of its implied warranties, plaintiff was caused to sustain severe and grievous permanent personal injuries and damages and, accordingly, seeks appropriate recompense.

141.    That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

142. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "130" of the first cause of action and paragraphs "133" through "139" of the second cause of action inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

143.   In connection with the manufacture, engineering, design, sale, assembly, use, distribution, inspection, testing and maintenance of the aforesaid products, defendants are strictly liable under the Doctrine of Strict Liability to a user thereof.

144.   As a result of the foregoing, plaintiff was caused to sustain severe and grievous permanent personal and damages and, accordingly, seeks appropriate recompense.

145.   That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

## AS AND FOR A FOURTH CAUSE OF ACTION:

146.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "130" of the first cause of action; paragraphs "133" through "139" of the second cause of action and paragraphs "142" through "143" the third cause of action, inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

147.   When plaintiff used the aforesaid products herein, defendants did warrant to plaintiff that the products were manufactured, engineered, designed, sold, assembled, used, distributed, inspected, tested and maintained in a proper, suitable, adequate and safe manner, and would remain so for several years and further warranted that the said products were safe and fit for the use and purposes for which they were made and that they would hold up under normal use without breaking and that the same were free from defects.

148.   Plaintiff accepted and used said products on defendants' representations and expressed warranties and used said products in reliance upon the promises and warranties made by the defendants herein and had no knowledge of any latent defects, inadequacy or deficiency in the

manufacture, engineering, design, sale, assembly, use, distribution, inspection, testing and maintenance of said products.

149.  Contrary to said representations and expressed warranties of defendants, as hereinabove alleged, said products were defective in its manufacture, engineering, design, sale, assembly, use, distribution, inspection and testing; were unfit for the purpose for which they was intended, lacked adequate or proper equipment and mechanism; were not manufactured with good, safe, fit and merchantable components and did not function properly or safely when lawfully operated.

150.  As a result of defendants' breach of express warranty, plaintiff was caused to sustain severe and grievous permanent personal and injuries and damages and, accordingly, seeks appropriate recompense.

151.  That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts, which might otherwise have jurisdiction herein.

### AS AND FOR A FIFTH CAUSE OF ACTION ON
### BEHALF OF PLAINTIFF, THOMAS TERRANOVA:

152.  Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "130" of the first cause of action; paragraphs "paragraphs "133" through "139" of the second cause of action; paragraphs "142" through "143" of the third cause of action" and paragraphs "146" through "149" of the fourth cause of action, inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

153.  That at all times hereinafter mentioned, plaintiff, THOMAS TERRANOVA, was the husband of plaintiff, CLAUDIA TERRANOVA, and as such lived and cohabited with her and was entitled to her society, services, consortium and companionship.

154.  That as a result of the foregoing, plaintiff, THOMAS TERRANOVA, has been deprived of the society, services, consortium and companionship of his wife, CLAUDIA TERRANOVA.

155.  That as a result of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

156.  That as a result of the foregoing, the amount of damages sought herein against defendants exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

WHEREFORE, Plaintiffs demand judgment against defendants herein for such monetary relief or other relief as shall be called for by the proof and to be awarded by the Court and/or jury; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

SHANDELL, BLITZ, BLITZ & ASHLEY, LLP
Attorneys for Plaintiffs
Office & P.O. Address
150 Broadway
New York, NY  10038
(212) 513-1300

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the State of New York, hereby affirms, that the undersigned has read the foregoing amended complaint, knows the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief and as to those matters affirmant believes them to be true.

The undersigned further states that the reason this affirmation is made by the undersigned and not the plaintiff is that plaintiff resides in a county other than that in which affirmant maintains his offices.

The grounds of affirmant's belief as to all matters not stated to be upon affirmant's knowledge are as follows:  Medical Reports, Hospital Records, Investigations, File.

The undersigned affirms that the foregoing statements are true, under penalty of perjury.

Dated: New York, New York
      February 29, 2008

_____
Mitchel H. Ashley

